IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHANIE HILLS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:19-cv-1262 |
| | § | |
| NXS MANAGEMENT LLC, NEXUS | § | |
| ENTERPRISES, LLC D/B/A NEXUS | § | |
| MEDICAL CONSULTING | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

For her Original Complaint against NXS MANAGEMENT LLC, NEXUS ENTERPRISES, LLC D/B/A NEXUS MEDICAL CONSULTING, for violations of Title VII of the Civil Rights Act of 1964 as amended, Plaintiff Stephanie Hills shows the following:

**INTRODUCTION**

1. This is a claim for wrongful discharge under Title VII of the Civil Rights Act of 1964 as amended.

2. Plaintiff applied for and was interviewed for the position of Director of Utilization Review with Defendant Nexus. Nexus had the Utilization Review Accreditation Commission (URAC) re-accreditation process coming up and needed Dr. Hills' credentials in order to become re-accredited (although never having met her, Nexus owners were aware of her credentials). After the interview, Ed Bolton (CEO) commented to the then Director of Human Resources that he was not expecting that Dr. Hills was black. Aubrey Longacre (Senior VP of Operations) then said we need to hire her so she can "relate to the others" and I will not have problems with another black employee anymore. Although the position applied for and posted was for Director of Utilization

Review, when Aubrey Longacre changed the title of the position to Associate VP of Managed Care, and offered the position to Dr. Hills, telling her she would be part of the Executive Team. Nexus then implemented a policy of allowing only Executive Team members in the Executive Suite; however, Dr. Hills was not allowed to office in the Executive Suite (despite having available offices) and was only allowed in the Executive Suite after checking in with the receptionist. No other member of the Executive Team was required to check in or office outside the suite, and Dr. Hills was the only African American member of the Executive Team. All other Executive Team members reported to the CEO except Dr. Hills, who reported to the Senior VP of Operations. Nexus management (including Ms. Longacre) segregated Dr. Hills from other executive level staff, undermined her expertise, and did not allow Dr. Hills to exercise decision making authority over her own staff. In short, these actions by Nexus created a hostile work environment which no reasonable employee should be expected to endure.

## PARTIES

3.     Plaintiff Stephanie Hills is an individual residing Kyle, Hays County, Texas. She may be served with papers in this case through the undersigned counsel.

4.     Defendant NXS MANAGEMENT LLC is a limited liability corporation organized under the laws of the State of Texas. It maintains its principal place of business at 1650 Independence Drive, New Braunfels, Texas 78132. It may be served with process through its registered agent, Larry Edward Bolton, at 1650 Independence Drive, New Braunfels, Texas 78132.

5.     Defendant NEXUS ENTERPRISES, LLC D/B/A NEXUS MEDICAL CONSULTING is a limited liability corporation organized under the laws of the State of Texas. It maintains its principal place of business at 1650 Independence Drive, New Braunfels, Texas 78132. It may be served with process through its registered agent, Larry Edward Bolton, at 1650

Independence Drive, New Braunfels, Texas 78132.

## JURISDICTION AND VENUE

6.      The Court possesses subject-matter jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16. Equitable and other relief is sought under 42 U.S.C. 2000e-5(g).

7.      Venue is proper in the San Antonio Division of the Western District of Texas under 42 U.S.C. Section 2000e-5(f)(3) because all the events giving rise to Plaintiff's claims occurred within the confines of the San Antonio Division of the Western District of Texas, and Plaintiff was employed within the Judicial District.

## FACTUAL BACKGROUND

8.      Dr. Hills is a fifty-six-year-old Registered Nurse, licensed in Texas in accordance with the Texas State Board of Nursing, and is of African American descent. She had more than twenty-year's experience in managed care, utilization review, case management, auditing and quality at the time she became employed with Nexus on June 4, 2018. Dr. Hills has a Bachelor's, Master's and PhD in Nursing and holds certifications as a Certified Case Manager (CCM) and Certified Fraud Examiner (CFE). She was constructively discharged from Nexus on September 20, 2018.

9.      Dr. Hills interviewed with Nexus to fill a position previously held by an employee with the title of Vice-President of Managed Care, who had an office in the Executive Suite. All executive level employees were in the Executive-Suite. Dr. Hills was considered an executive level employee when hired and was the only African American in a leadership position at Nexus.

10. During the interview, the CEO and Senior VP of Operations (owners of the company) commented on Plaintiff's race, African American, to the Human Resources Director. The owners stated that they were" shocked" that Plaintiff was African American, but they needed to hire her because it would give the <u>appearance</u> to other African American employees that they would be treated fairly.  Further, Nexus needed Dr. Hills' credentials in order to move forward with re-certification application of URAC (Utilization Review Accreditation Commission).  She was the only applicant at the time, and only person interviewed; the CEO and Senior VP of Operations did not know she was African American prior to the interview; therefore, they had to offer her the position at that point since they needed her credentials and she was the only person interviewed.

11. Although Dr. Hills was hired at the executive level, the owners told the Human Resources (HR) Director that she was not to be incorporated into the executive suite.  This was different treatment than the person who held the Managed Care position previously (who was Caucasian).  While Plaintiff worked at Nexus, the executive team had bi-weekly meetings to discuss critical aspects of the organization and each executive representing the various departments were present. Plaintiff was never invited to attend these meetings despite having the department with the most employees (review nurses) and the most critical unit in the organization upon which the organization gained the most revenue.

12. Instead, she was the only executive member mandated to attend weekly meetings with managers, supervisors and directors where she would present her weekly data to the group. Plaintiff was the only African American in these meetings and was openly questioned by lower level managers regarding her team members, productivity and progress which created a hostile working environment. This was also demoralizing and demeaning. Plaintiff was treated as if she

was not an executive during these meetings and was oftentimes openly counselled by the Senior VP of Operations in front of the staff. The previous person who held the Managed Care position attended the Executive Team meetings.

13. During Dr. Hills employment with Nexus, her office was logistically separated from all other executive staff. She was placed in a corner office in another section of the building that was reserved for supervisors and managers. The other executive team members (CEO, Senior VP of Operations, CFO, Chief Information Officer) were all located in the executive "C" suite of the organization which had a private fully stocked kitchen and separate rest rooms. Being placed in that location afforded them the privilege of critical meetings and other information away from the frontline staff. They were afforded the opportunity to interact with their peers and share relevant knowledge about the company which could enhance their ability to perform their duties and quickly change to meet strategic goals.

14. The "C" suite was a secured area that required lower level staff members to badge in for access. An email was sent to all Nexus staff members in Aug. of 2018 informing all non-executive staff that they could no longer enter the "C" suite to speak with any of the executive staff unless they first stopped at the receptionist desk located at the entrance. Because Plaintiff did not have an office in the "C" suite, she was the only member of the executive team that was required to stop at the front desk before entering the "C" suite for permission to meet with the executive staff, including her boss.

15. Because of the actions of the owners, Plaintiff's office lacked the same degree of privacy and authority that was afforded to all other executives at Nexus. Additionally, having to check in at the front desk was humiliating, degrading, and severely undermined her authority in the organization which diminished the respect her staff had for her position. It projected the image

throughout Nexus that Plaintiff was not to be considered on the same level as the other executives. It also prevented her from positively interacting with her peers and hindered her ability to gain critical job-related information.

16. Plaintiff asked the Senior VP of Operations during their first one on one meeting about the location of her office and was told it was to keep her closer to her staff. This was not consistent with the other executives who also had staff in other areas of the building.

17. Lastly, the person who previously held Plaintiff's position at Nexus was Caucasian. Her office was in the "C" suite next to the Senior VP of Operations. During Plaintiff's time at Nexus, that office remained vacant along with several other offices in the "C" suite. When the new VP of Information Technology/Chief Information Officer was hired during Plaintiff's employment at Nexus, he was given a vacant office in the "C" suite.

18. Although Dr. Hills made several suggestions, she was not given authority to implement any of them at the time, and none were implemented at the time despite her having authored multiple job descriptions, reorganizational charts, and a pilot plan for a mentorship program.

19. Plaintiff's authority was undermined and minimized regularly. For example, within a couple weeks of working at NEXUS, Dr. Hills identified that a Licensed Practical Nurse (LPN) was working above her scope of practice and informed Aubrey Longacre (Senior VP of Operations) that the functions should only be performed by a Registered Nurse, and the workload needed to be reassigned. Longacre ignored the information and continued to allow the nurse to perform the work. Longacre then informed the HR Director that Plaintiff would likely not be a good fit because she was already trying to make changes. It wasn't until a couple months later when, in the preparation for an accreditation audit, it was brought to the attention of the company

and the Compliance Officer, that only an RN should perform the functions Dr. Hills identified, that Longacre reassigned the tasks to an RN.  This occurred only a few days before the audit.

20. Other instances occurred when Plaintiff attempted to hire nurses for the UM department she oversaw.  Dr. Hills had to write a summary of the interview for each nurse and suggested salary which was reviewed by HR and adjusted by Longacre before the nurse was approved for hire.  In one case, Plaintiff recommended not to hire a nurse who did not have a RN license in the state of Texas; Longacre overruled the decision and hired the nurse anyway. Longacre is not a licensed practitioner and had no knowledge of the Texas State Board of Nursing licensing requirements. Despite this fact, Dr. Hills could not make decisions for hiring the nurses in her department. The decisions by Longacre caused Plaintiff's clinical license to be at risk since the nurses were operating under her direct authority on paper.

21. During the Utilization Review Accreditation Commission (URAC) re-accreditation that occurred while Plaintiff was at Nexus, she was not allowed to attend any of the meetings which impacted her credibility within the organization. The entire process was conducted to evaluate the company's compliance with the accreditation standards of the nursing staff in the performance of their duties. Plaintiff was not provided any documentation that was submitted to the URAC auditor and was not invited to any of the preparation or actual audit meetings even though she was responsible for ensuring the nurses met the standards.  All staff members that were invited to attend the meetings were Caucasian.

### III.    ADMINISTRATIVE PROCEDURES

22. On May 11, 2018, within 180 days of the occurrence or act complained of herein, Plaintiff filed her Charge with the EEOC alleging that Defendants had committed the unlawful employment practice of race discrimination against the Plaintiff in violation of Title VII of the

Civil Rights Act of 1964, as amended. Plaintiffs received a right to sue letter issued by the EEOC on September 6, 2019.

## IV.   CAUSES OF ACTION

23. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21 supra.

24. The actions taken against Plaintiff, Stephanie Hills, as described in the preceding paragraphs constitutes race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16. Defendants are an employer with at least 15 employees, thereby subjecting itself and its business to coverage under the Act.

25. The conduct of the Defendant, which is complained of, constitutes race discrimination against Plaintiff in violation of Federal law.

## V.   LIABILITY

26. Aubrey Longacre is an employee and vice-principal of Defendants; therefore, Defendants are liable for the conduct of Longacre as well as its own wrongful conduct under a theory of Respondeat Superior. Further, based upon information and belief, Defendant Nexus ratified the actions of Longacre in that they were aware of the unlawful actions she was taking, yet did nothing to stop them and in fact encouraged them in this respect.

## VI.   ACTUAL DAMAGES

27. As a result of the incidents described above, Plaintiff has incurred damages in the form of lost earnings. As a proximate result of the wrongful acts of the Defendant, Plaintiff has suffered an extreme reduction in income and other valuable job rights for which she hereby sues. Plaintiff therefore sues for differential in earnings, back pay, lost wages, front pay, lost future earnings and/or diminished earning capacity, to the extent permitted by law, due to the acts complained of above.

28.     As a result of the injuries sustained by the Plaintiff, she has suffered shame and humiliation, embarrassment, mental pain and anguish, and lost benefits in the past, and likely will continue to suffer some, if not all, of these damages in the future.

29.     By reason of the allegations of this petition under Title VII of the Civil Rights Act of 1964, as amended, Plaintiff is entitled to recover attorney's fees in a sum that is reasonable and necessary.  In this connection, Plaintiffs will show that the attorney whose name is subscribed to this petition has been employed to assist Plaintiff in the prosecution of this action.  A reasonable attorney's fee is required for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts including the Court of Appeals and/or the Supreme Court.

## VII.     EXEMPLARY DAMAGES

30.     The acts of Defendant described above, by and through their agents, employees and vice-principals, resulted from more than momentary thoughtlessness, inadvertence, or error of judgment, but rather resulted from that entire want of care which establishes that Defendant's acts or omissions were the result of actual conscious indifference to the rights and welfare of Plaintiff, or alternatively, since Defendant's acts are malicious, that is specifically intended by Defendant to cause substantial injury to Plaintiff or done with a flagrant disregard for the rights of Plaintiff and with actual awareness that their acts or omissions involved an extreme degree of risk that the acts and omissions would result in the harm claimed by Plaintiff.  Accordingly, Plaintiff is entitled to a jury instruction regarding exemplary damages.

31.     Further, the acts of Longacre, as well as other individual vice-principals of Defendant, were ratified by the actions of Defendant; therefore, Defendant is liable for exemplary damages awarded in this regard.

## VIII. CLAIMS FOR RELIEF

32. Plaintiff Stephanie Hills seek to recover all of damages in an amount which the jury, in its role as trier of the facts in this case, determines is just and appropriate. Additionally, Plaintiff hereby pleads all equitable relief and damages as allowed by law.

## IX. JURY DEMAND

33. Plaintiff requests trial by jury.

## X. CONCLUSION AND PRAYER

34. Plaintiff Stephanie Hills prays that, upon final judgment, she be awarded the following:

a. Back pay and benefits;
b. Front pay and benefits;
c. Compensatory damages;
d. Punitive damages;
e. Attorney's fees;
f. Costs of Court;
g. Prejudgment and post-judgment interest accruing at the maximum rate allowed by law;
h. Such other and further relief as the Court deems necessary, proper and equitable, general or specific, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

LAW OFFICES OF PAUL G. VICK
12703 Spectrum Drive, Suite 103
San Antonio, Texas 78249
210-735-1794
210-733-7510 fax

By: /s/ Paul G. Vick
Paul G. Vick
State Bar No. 20563950
ATTORNEYS FOR PLAINTIFF